UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

United States of America,

–v–

Jose Fernando Orozco Orozco,

                Defendant.

18-CR-716 (AJN)

MEMORANDUM
OPINION & ORDER

---

ALISON J. NATHAN, Circuit Judge, sitting by designation:

Defendant Jose Fernando Orozco Orozco moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons that follow, the motion is DENIED.

## I. BACKGROUND

On October 3, 2018, Orozco was indicted on one count of conspiracy to import, manufacture, and distribute over five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 963, 959(a), 960(a)(3), and 960(b)(1)(B). Dkt. No. 3. Orozco voluntarily surrendered to law enforcement in December 2018. PSR ¶ 18.[1]

Orozco pled guilty on July 16, 2019, Dkt. No. 30 ("Plea Tr."), at 27, and was sentenced on December 2, 2019, Sentencing Tr. The Court calculated a Guidelines range of 87 to 108 months of imprisonment, with an offense level of 29 and criminal history category of I. *Id.* at 7. The Court ultimately sentenced Orozco to a below-Guidelines term of 72 months' imprisonment, citing his acceptance of responsibility and consent to being brought to the United States during his self-surrender. *Id.* at 18–19. The Court recommended to the Bureau of Prisons ("BOP") that

---

[1] The factual description of Orozco's offense in the pre-sentence report ("PSR") was adopted by the Court without objection at Orozco's sentencing hearing. Dkt. No. 40 ("Sentencing Tr."), at 6.

Orozco "be placed in a facility as close to the Florida area as possible to help facilitate maintenance of ties with his family." Dkt. No. 39 at 2; Sentencing Tr. 21. Nevertheless, Orozco remained detained at MDC Brooklyn—where he had been held pre-sentencing—into the following spring, when "the COVID-19 pandemic took hold in the United States," causing BOP to "suspend[] all inmate transfers in an effort to slow the spread of COVID-19," creating a backlog of prisoner transfers that continued for several months. Dkt. No. 64 ("Gov't Opp'n"), at 2 (internal quotation marks omitted).

On January 26, 2021, Orozco's counsel filed a letter with the Court noting that Orozco continued to be housed at MDC Brooklyn and requesting that the Government expedite calculating Orozco's jail time credit and/or designating him. Dkt. No. 43. The Court ordered the Government to respond within two weeks. Dkt. No. 44. The Government's response, belatedly filed under seal on August 30, 2021, noted that Orozco had been designated to a minimum-security facility and that he would be transferred from MDC Brooklyn within four to six weeks. Dkt. No. 49.[2] Meanwhile, Orozco wrote a letter to the Court, dated August 4, 2021, requesting the appointment of counsel for the purpose of filing a compassionate release motion, which the Court granted. Dkt. No. 46. The Court received notice by mail that Orozco had been transferred to FCI Mendota in October 2021. Dkt. No. 52.

Pursuant to the briefing scheduled adopted by the Court, Dkt. No. 61, Orozco filed his motion for compassionate release on January 31, 2022, Dkt. No. 62 ("Def.'s Mem."); the Government filed its response on February 25, 2022, Gov't Opp'n.

---

[2] This document was filed under seal and does not appear on the docket.

## II.     LEGAL STANDARDS

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011) (cleaned up). The compassionate-release statute creates one such exception: It allows a court to "reduce" a term of imprisonment, after considering the factors set forth in 18 U.S.C. § 3553(a), if "it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Under the First Step Act, defendants serving their sentence may move the Court for compassionate release after they have exhausted their administrative remedies or thirty days have lapsed from the receipt of a compassionate release request by the warden. *United States v. Scparta*, — F. Supp. 3d —, No. 18-CR-578 (AJN), 2020 WL 1910481, at *4 (S.D.N.Y. Apr. 20, 2020).

In order for a defendant to be eligible for a reduction of their term of imprisonment under 18 U.S.C. § 3582(c)(1)(A), there must be "extraordinary and compelling reasons" warranting such a reduction. The Second Circuit has held that the Sentencing Commission's policy statement § 1B1.13 Application Note 1(D), which instructs that the power to determine what reasons are extraordinary and compelling remains exclusively with the Bureau of Prisons director, is no longer applicable. *See United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020). Therefore, the Court may "independently . . . determine what reasons, for purposes of compassionate release, are 'extraordinary and compelling.'" *Id*.

Moreover, presenting an extraordinary and compelling reason for release is only one of the requirements for a reduction in one's prison sentence under 18 U.S.C. § 3582(c)(1)(A). *See United States v. Ross*, No. 15-CR-95 (AJN), 2022 WL 1018184, at *2 (S.D.N.Y. Mar. 25, 2022).

The Court must also determine that granting release is consistent with the factors set forth in 18 U.S.C. § 3553(a) and the applicable policy statements of the Sentencing Commission to determine if release is appropriate. *See* 18 U.S.C. § 3582(c)(1)(A). In particular, the Court must consider whether a reduced sentence would still "reflect the seriousness of the offense, . . . promote respect for the law, . . . provide just punishment for the offense," and "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A)–(B).

### III. DISCUSSION

Orozco contends that "his sentence has been more severe than what the Court anticipated given [BOP's] failure to properly and timely classify and designate him to a final place of incarceration," and that the 22 months post-sentencing he spent detained at MDC Brooklyn constitutes an "extraordinary and compelling failure of BOP to execute the Court's sentencing order" rendering a new sentence of time served appropriate. Def.'s Mem 2, 4–5. Orozco's arguments fail to demonstrate his entitlement to relief.

As an initial matter, before the Court may modify a term of imprisonment, a defendant usually must satisfy the statute's administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A). Orozco failed to do so. BOP reports that it has no record of any administrative request for compassionate release submitted by Orozco to any BOP facility, Gov't Opp'n 3, a point which Orozco does not contest. Rather, Orozco primarily argues that "exhaustion of administrative remedies is not an issue for his motion," citing *United States v. Saladino*, 7 F.4th 120 (2d Cir. 2021) (per curiam), and *United States v. Delgado*, — F. Supp. 3d —, No. 19-CR-732 (KMW), 2022 WL 252064 (S.D.N.Y. Jan. 27, 2022). Def.'s Mem. 12. Neither case provides support for his argument.

In *Saladino*, the Second Circuit held only that the § 3582(c)(1)(A) exhaustion requirement "is a claim-processing rule that may be waived or forfeited by the government" rather than "a jurisdictional limitation on a court's power to consider an inmate's motion for compassionate release." 7 F.4th at 121. But here, the Government has not waived any exhaustion argument, instead vigorously contending that Orozco failed to satisfy the applicable exhaustion requirement. Gov't Opp'n 4–5. Although "[t]his exhaustion requirement is amenable to equitable exceptions," *United States v. Tucker*, No. 15-CR-95 (AJN), 2021 WL 3056293, at *1 (S.D.N.Y. July 20, 2021) (internal quotation marks omitted), Orozco does not articulate any such exception to which he would be entitled.

*Delgado* is similarly inapposite. In *Delgado*, there was no dispute the defendant "submitted two requests to the BOP for compassionate release." 2022 WL 252064, at *2. Instead, the government argued that, in his court filings, the defendant "newly raise[d] the issue that he [wa]s receiving insufficient medical care, separate from his concerns about COVID-19" that had been the focus of his administrative complaints, "which the BOP was not told and therefore was not able to consider." *Id*. The dispute thus turned on *issue* exhaustion— "whether 18 U.S.C. § 3582(c) requires a defendant to exhaust the available BOP procedures with respect to each issue he raises." *Id*. Noting an intra-circuit split on the question, the court concluded that § 3582(c) did not incorporate an issue exhaustion requirement, and accordingly held that the defendant "ha[d] satisfied section 3582(c)'s administrative exhaustion requirement, even though his Oct. 24 Letter presents issues not raised during the first internal BOP process." *Id*. at *2–3. In contrast, here, the problem for Orozco is not that he grounds his compassionate release motion on issues not raised during the internal BOP process, but rather that he never initiated any internal BOP process concerning a compassionate release request at all.

Orozco's prior correspondence with the Court does not satisfy the exhaustion requirement. Even assuming a letter filed on the docket suffices, Orozco's counsel's January 26, 2021 letter makes no mention of compassionate release, seeking only to expedite Orozco's designation and calculation of jail time credit, Dkt. No. 43, while Orozco's August 2021 letters only request that the Court appoint counsel to assist with his compassionate release motion, a request that was granted, Dkt. Nos. 46, 48.

Even assuming that the Court may excuse Orozco's failure to exhaust administrative remedies, the Court concludes that Orozco has not proven the existence of an extraordinary or compelling reason that warrants compassionate release or a modification of his sentence. Orozco solely relies on the fact that "[a]pproximately one-third of his sentence" was served at MDC Brooklyn, "a *transitional facility* meant to house inmates pending trial" rather than "a long-term detention facility." Def.'s Mem. 5, 10. Orozco also cites several news articles reporting on electricity and water shortages and other "ongoing inhumane conditions at MDC Brooklyn." *Id*. at 10–11.

Orozco's argument falls short, substantially for the reasons stated in the Government's response. *See* Gov't Opp'n 5–6. As the Government explains, Orozco "was one of the thousands of defendants affected by the transfer delays" engendered by the COVID-19 pandemic. *Id.* at 2. The Court has no doubt that the pandemic "has led to frustrating and difficult delays in the prison system." *United States v. Wheeler*, No. 04-CR-1060 (DC), 2020 WL 6151248, at *1 (S.D.N.Y. Oct. 20, 2020) (Chin, J.). But "[i]n this context, [Orozco's] complaint about delays in prison transfers, lacking any specific references to personal health concerns linked to the current pandemic, is not an extraordinary and compelling reason that warrants a reduction of his sentence." *Id.*

In contending otherwise, Orozco relies on Judge Coburn's comments at sentencing in *United States v. Tovar Pupo*, Tr. at 92–93, No. 1:04-CR-114-9 (RBW) (D.D.C. Feb. 2, 2016), Dkt. No. 536, and on *United States v. Gonzalez*, No. 3:19-CR-90 (VAB), 2020 WL 7024905 (D. Conn. Nov. 30, 2020). But *Tovar Pupo* concerned an initial sentencing, not a motion for compassionate release, so the court had no occasion to consider whether the defendant's time spent in a transitional facility constituted an "extraordinary and compelling reason[]" warranting a reduction in an already-imposed sentence. 18 U.S.C. § 3582(c)(1)(A)(i). And while the *Gonzalez* court did grant the defendant's compassionate release motion and acknowledge the difficulties associated with a long-term stay at "a BOP holdover facility" like MDC Brooklyn, the extraordinary and compelling reason it relied on was the defendant's obesity and resulting increased risk of severe illness in light of the COVID-19 pandemic, prior to the availability of vaccines. 2020 WL 7024905, at *5, 7. Orozco does not offer any analogous health concerns, and the Government reports very low incidence of COVID-19 at FCI Mendota. Gov't Opp'n 3. In short, Orozco fails to show that the sole reason proffered—the delayed transfer out of MDC Brooklyn—constitutes the sort of extraordinary and compelling reason that is a prerequisite to relief under 18 U.S.C. § 3582(c)(1)(A). Indeed, Orozco all but concedes the point, noting that "the nature of a jail facility and rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of policy statement U.S.S.G. § 1B1.13, app. n.3." Def.'s Mem. 8 (internal quotation marks omitted).

Finally, even if Orozco had demonstrated extraordinary and compelling reasons for early release, the sentencing factors in 18 U.S.C. § 3553(a) would counsel against granting relief. *See, e.g.*, *United States v. Francisco-Ovalle*, No. 18-CR-526 (AJN), 2021 WL 123366, at *3 (S.D.N.Y. Jan. 13, 2021). As the Court noted at sentencing, Orozco pled guilty to "a very

serious offense," and played a "not insignificant" role in a conspiracy "to import substantial quantities of cocaine into the United States"—conduct that "require[d] a serious sentence in order to promote respect for the law, provide just punishment for the offense, deter and protect the public from further crimes." Sentencing Tr. 16. The Court further explained that deterrence was of particular concern because "Mr. Orozco was previously convicted of essentially the same offense and sentenced to a ten-year term of imprisonment" but nevertheless "again chose to engage in the exact same dangerous and criminal activity." *Id.* at 16–17. Even so, taking into account all of the relevant factors, including Orozco's "additional indication of acceptance of responsibility," the Court ultimately sentenced Orozco to a below-Guidelines term of 72 months. *Id.* at 18–19.

Ultimately, neither Orozco's extended stay in MDC Brooklyn, nor the prospect of Orozco's future transfer to an immigration detention facility while awaiting removal proceedings, *see* Def.'s Mem. 13–14, warrant granting his motion and reducing his sentence to time served when weighed against the balance of the § 3553(a) factors—including the need to account for the seriousness of the defendant's offense, to promote respect for the law, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes. *See* 18 U.S.C. § 3553(a)(2)(A)–(C). This is particularly so given that Orozco has since been transferred to FCI Mendota and does not raise ongoing concerns with his conditions of confinement, and given that he has currently served approximately 40 months in detention, a little over half of his original sentence. "Courts in this district have denied motions for compassionate release by defendants who have served comparable portions of their respective sentences." *Delgado*, 2022 WL 252064, at *5 (citing *United States v. Nieves*, No. 12-CR-931 (AJN), 2020 WL 2476185, at

\*3 (S.D.N.Y. May 13, 2020)); *see also, e.g.*, *United States v. Rodriguez*, No. 16-CR-7 (AJN), 2020 WL 7640539, at \*4 (S.D.N.Y. Dec. 23, 2020).

## IV. CONCLUSION

For the reasons stated above, Defendant's motion for compassionate release is DENIED.

The Clerk of Court is respectfully directed to terminate Dkt. Nos. 62, 63, and 64.

SO ORDERED.

Dated: April 27, 2022
New York, New York

_____
ALISON J. NATHAN
United States Circuit Judge,
sitting by designation